### THE AMERICAN SPLANE COMPANY
*v.*
### LIZZIE W. BARBER.

*Opinion filed December 18, 1901—Rehearing denied February 5, 1902.*

· 1. CONTRACTS—*right of a third party to sue on a contract under seal.* Under section 18 of the Practice act, concerning sealed instruments, one for whose benefit a promise is made by contract, under seal, to pay money, may sue in his own name under the contract, although not a party to the instrument.

·2. SAME—*right to introduce a contract under seal in evidence in assumpsit.* In assumpsit by a third party to recover money due by the terms of a sealed contract, the contract is admissible in evidence under the common counts, where it has expired by its own limitation and nothing remains to be done but to pay the plaintiff.

*American Splane Co. v. Barber,* 91 Ill. App. 359, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

This is an appeal from the Appellate Court for the First District affirming a judgment of the superior court of Cook county for $1097.92, recovered by the appellee against the appellant. The declaration was in assumpsit; contained two special counts and the common money counts. Plea of general issue. The contract declared on in the special counts is as follows:

"This contract, made at Chicago, in the State of Illinois, by and between the American Splane Company, a corporation duly organized and doing business under and by virtue of the laws of the State of Illinois, in said city and State, or its successors or assigns, party of the first part, and E. A. Barber, of Humboldt, State of Kansas, party of the second part:

"*Witnesseth:* That for and in consideration of the promises and agreements hereinafter contained to be kept and performed by said second party, said first party agrees to employ said second party for the sale of its goods, known as school apparatus, in the territory hereinafter described, during the period commencing on the 26th day of May, 1896, and terminating on the 26th day of May, 1897; and said first party also agrees to bill said goods to said second party at the following wholesale prices, to-wit, forty per cent discount from the regular list retail prices. Said first party also agrees to pay said second party a salary of $125 per month, together with all necessary expenses of carrying on the business, the same to be payable monthly, when monthly reports are rendered. Said first party also further agrees to pay said second party a profit of ten per cent on all sales made by him or his agents during the term of this contract, which shall be due and payable monthly, the same as salary. Said second party shall, when this contract is signed, procure L. W. Barber, wife of said E. A. Barber, to pay said first party $1000 on account of the stock of said goods to be carried under this contract, and shall keep said sum of $1000 so invested during the term of this contract; but it is understood and agreed that said first party shall furnish and consign to said second party, from time to time, such quantities of goods as may be required to meet the additional demands of the trade and keep on hand an aggregate stock averaging at least $2000 during the term of this contract. Said second party agrees to devote himself exclusively to selling and furthering the sale of said goods to the best of his ability, and promises to render competent and efficient service to said first party during the period above mentioned.

"It is understood and agreed that said second party, in selling said goods, may allow his agents and salesmen a discount of forty per cent from the regular list retail prices, and also that said first party shall accept as cash any valid school warrants taken by said second party in the sale of said goods. Said second party shall at the end of each month hereunder file with said first party a full and correct report of all business transacted, goods sold and expenses incurred, and shall accompany such report with a remittance for all goods sold during the month, less deductions for salary, expenses and commissions; and said second party shall also file with said first party any other reports, papers and documents pertaining to the business, in such manner and at such times as said first party may, from time to time, request; and it is expressly understood and agreed that time is of the essence of this contract. Said second party shall establish and maintain his office for the transaction of business hereunder in St. Louis, in the State of Missouri, and shall conduct his operations hereunder within Missouri, southern Illinois, and such other territory as may be mutually agreed upon from time to time, working in the different portions of the same as said first party may advise from time to time.

"It is further understood and agreed that at the expiration of this contract said first party shall relieve said L. W. Barber of her interest in said goods, and shall pay her therefor the price they have cost her, namely, $1000.

"In witness whereof the said parties have hereunto affixed their hands and seals, in duplicate, this 25th day of May, 1896.

AMERICAN SPLANE CO.,<br>
By F. L. MUNROE, <i>Sec. and Treas.</i>

(Corporate Seal.)

E. A. BARBER.   [Seal.]

"I hereby agree to the conditions of the above contract and will invest the money as therein provided.

"Witness my hand and seal this 25th day of May, 1896.

L. W. BARBER.   [Seal.]<br>
By E. A. BARBER, <i>her Attorney in fact.</i>"

At the trial appellant objected to the introduction of the contract, which was admitted in evidence and exception taken. After the trial and verdict the appellant entered its motion for a new trial, and filed in support thereof the affidavit of one F. L. Munroe, showing that the goods mentioned in the contract were, before the bringing of the suit in question, attached at the suit of E. A. Barber, the husband of appellee, for salary and

expenses alleged to be due to him from appellant, and, by judgment in attachment had in St. Louis, Mo., sold, and that appellant had no knowledge of that fact until after the verdict was rendered. When that affidavit was presented the trial court allowed the appellee to tender, by written tender, to the appellant the goods mentioned, which she did, and which the appellant declined to receive, whereupon the court entered judgment. The Appellate Court affirmed this judgment, and the case is brought here, and the only errors now insisted on are that the court erred in admitting the contract in evidence and in overruling the motion for a new trial.

JAMES H. TELLER, for appellant.

DAVID H. STAPP, and NEWCOMER & DELLENBACK, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

The first count in the declaration set out the contract *in hæc verba*, averring it to be a contract between E. A. Barber and appellant, and averring that it was terminated by E. A. Barber by reason of a breach thereof on the part of appellant, and further averring payment by appellee of $1000 under the contract, and that by the contract, and its termination, an action had accrued to appellee. The second count set out the contract in legal effect, as between E. A. Barber and the appellant, and averred the payment by the appellee of $1000 thereunder, the expiration of the contract and her right of recovery. The common money counts were for money due from the appellant to the appellee. It is insisted, however, by the appellant, that this contract being between E. A. Barber and the appellant, and being under seal, the appellee could not maintain an action upon it in her own name.

Upon the trial of this cause appellee put in evidence the receipt of appellant, bearing date May 25, 1896, as follows; "Received of E. A. Barber check for one thou-

sand dollars ($1000) drawn by Elizabeth W. Barber, on People's National Bank, Ottawa, Kansas, and endorsed by E. A. Barber, on account of contract bearing even date herewith,"—which was signed by appellant. This shows that appellee had complied with the contract according to her written acceptance thereof of the same date endorsed on the contract offered in evidence. But two clauses of the contract, outside of this endorsement, refer to this $1000 or to appellee. The first reference made to it is the following:  "Said second party shall, when this contract is signed, procure L. W. Barber, wife of said E. A. Barber, to pay said first party $1000 on account of the stock of said goods to be carried under this contract, and shall keep said sum of $1000 so invested during the term of this contract." The next reference to it is the last clause of the contract, which is: "It is further understood and agreed that at the expiration of this contract said first party·shall relieve said L. W. Barber of her interest in said goods, and shall pay her therefor the price they have cost her, namely, $1000."

We do not regard appellee as a party to the written contract, but it seems very clear to us that the provision with reference to the re-payment of $1000 was express to her and for her benefit, and since the enactment of section 18 of chapter 110 of the Revised Statutes of 1874, (p. 776,) appellee could sue in her own name under this contract, regardless of the fact that the contract was under seal. (*Dean* v. *Walker*, 107 Ill. 540; *Webster* v. *Fleming*, 178 id. 140.) Under the view we take of this contract, when it had expired by its own limitation, as was the case when this suit was brought, there was no act or thing remaining to be done by appellee. Appellant owed her the money, and payment of it was all that was required by it. Such being the status of the case, we think the contract was competent evidence under the common counts. We think there was no error in admitting it in evidence.

Nor do we think the court erred in refusing to set aside the verdict and grant a new trial. It would be hard to tell what legal definition to apply to the status of appellee to that contract. It is clear from its provisions that she was to get nothing by it and was to give $1000, which was to be paid back to her at the expiration of it. Her husband, E. A. Barber, was by the contract made the agent of appellant to handle its goods and all goods were to be shipped to this agent. After this contract was made the goods were shipped to St. Louis, and this agent, by direction of his principal, established an office there for the purpose of handling them. He was required by appellant to do business in its name and to use the following letter-head: "American Splane Company, St. Louis Branch.—E. A. Barber, Mg'r.—, ........ Street, No. ...., St. Louis." Appellant also furnished money to fit up the office, and goods were shipped to Barber, as agent, accordingly. Appellee was in no manner to have charge of these goods. They were never to be delivered into her custody; .she was never to render any account for them; nor was she to return them, but she was to be *relieved* of her interest in the goods, at the expiration of the contract, by the payment by appellant to her of $1000. There is no stipulation in the contract that this money is to be held or should stand as a guaranty that E. A. Barber would perform the contract or return the goods. In fact, there is no stipulation that he shall return the goods, or any part of them. The suit was begun August 26, 1897, and the contract had expired by its own limitation in May of that year. Appellee was entitled to have her money returned to her, and, by the terms of said contract, to be relieved of her interest. We think that the tendering of the goods after the verdict could not in any manner affect the rights of the parties in this case.

Finding no error the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*